Good morning. Good morning. Please, the Court, I'm John Henry Brown. I represent Mr. Carlson, who's the appellant in this matter. Just a side note of personal interest is, less than eight hours ago I was sitting next to Judge Layton at dinner at the American College Lawyers' Dinner Party, and Judge Layton was the judge in this case. So I know what we didn't talk about, and I also should say that I respect Judge Layton and like him a lot. It's a small town sometimes. What's that? It's a small town and sometimes a small world. Oh, my goodness. I mean, it's like weird, very weird. And although I do think this case is actually rather straightforward and presents two very clear errors, I don't – I think the government led Judge Layton down the path. But this is a very interesting case to me for a lot of reasons, and I'll try to – I would like to reserve two hours, by the way. Two minutes. Please watch the clock. Yeah, I will. Thank you. So Mr. Colson was convicted of possession with intent to distribute, not conspiracy, which I think is very important in this case. He was also convicted of 924C firearm charge. There was a jury trial before Judge Layton. The mandatory minimum sentence was imposed, which was 15 years. The day of trial, his retained lawyer – and that's really important to make that distinction. I was involved in that recently also, so I know the case law pretty well. His retained lawyer asked to be removed at Mr. Carlson's request the day of trial. Wasn't that the problem? We understand that somebody who's retaining counsel has enormous freedom to change counsel, but the court's allowed to consider its own calendar, and in this case the court hears the request from your client. The morning trial is supposed to begin. The jury pool has been gathered. Presumably counsel and witnesses are ready. Your client doesn't want to represent himself, but he hasn't done anything to obtain a different lawyer, so guaranteed they can't have trial that day if he's allowed to change counsel. So you're going to run into the court's own calendar problems. You've got this jury pool sitting there. Everybody else is prepared. Isn't that the problem here, that we recognize that somebody who's retaining counsel has complete freedom to make a switch, except when it runs into these kind of court practical problems? You deny there were practical problems raised by, there we are in the morning of trial, jury pool sitting over there, and, oh, by the way, I want to change lawyers and I don't have one yet. They can't go forward, can they? No. So isn't that the problem? That's the problem. I don't think that results in supporting Judge Layton's decision to fail to give a continuance, and I'll tell you why, if I might. Well, that's why I'm asking the question, so tell me why. I happen to be involved in the same issue with Judge Zille, who I respect tremendously, and who is, as you all probably know, quite a scholar. And Judge Zille was amazed because under the Nguyen case, the Ninth Circuit case in 2001, and then under the Rivera-Corona case of 2005, the Ninth Circuit, both, they actually said, quote, a direct quote from Nguyen, which was also in Rivera-Corona, was a retained counsel can be removed for any reason, comma, or no reason at all. But, counsel, that doesn't go to Judge Clifton's question. The question of whether your client can fire his retained counsel for any reason is different from whether a court has to allow that if the court says, I'm not going to allow it because of my trial calendar and the other things the court here talked about. So I'd be interested in your response as to why this judge abused his discretion when this was the morning of trial and he specifically referenced his packed trial calendar. What is it about the calculus that he looked at that indicates he abused his discretion? Well, to me, I mean, I really find this is a fascinating issue because if I'm correct, and I might not be, if I'm correct, there is no discretion because under the Ninth Circuit cases, it says there – I'm not correct. How do you argue abuse of discretion if there's no discretion? United States v. Brown, Ninth Circuit, 2015. Right. Defendant may have the counsel of his choice unless the contrary result is compelled by purposes inherent in the fair, efficient, and orderly administration of justice. It is not an open-ended, unlimited right. So why isn't the fact that trial is going to have to be continued with all those other facts we went through, why isn't that justification for the court to say no? It might have been if a record was made correctly, and it was not. There was an unusual and glib sort of comment from the trial judge, which I think was a bit unsettling. Was it hard to figure out why the request was being declined? Sorry? Was it hard to figure out why the trial court was not granting the request? It didn't seem that hard to me. To me, it was. Having been in that situation many, many times, yes. To me, it was not clear because when I had – in front of Judge Zille in my case, Judge Zille made this very detailed record because we all know, and I'm not familiar with your particular backgrounds, but in trial courts, in federal district court, there are many, many options when it comes to – the Nguyen case, the jury had actually been impaneled, and the Ninth Circuit said, well, it doesn't matter. The analysis that you're engaging in, I think both of you, Justice, here, our analysis is an analysis that's normally done in a public defender sort of case, and the Nguyen case and the Brown case itself and the Rivera-Corona case says that that analysis is not appropriate. This is the Ninth Circuit. It's not appropriate for retained counsel. I don't think we're reading the same cases. Oh, they're in my brief, but I think I'm – They're the same names, but we don't get – we don't glean the same things from those cases. It's hard to argue with a quote, a direct quote, that retained counsel can be removed or allowed to leave for no reason at all. You're talking about the reason. Yeah, but that doesn't say at any time, at any place, no matter the circumstances. Did you have a quote that says that retained counsel can be removed on the morning of trial? It's an absolute right to remove it. I mean, that's the situation we're facing here. So I read the cases the same way as Judge Clifton, which is stepping back to Gonzalez-Lopez, a Supreme Court case, that indicates that the right to fire retained counsel is accepted by purposes inherent in the very efficient and orderly administration of justice, and we haven't – we've expanded on that. We haven't narrowed that. So unless you have a case that says there's an absolute right to fire your retained counsel on the morning of trial, I think there's a problem for your client on this point. Well, the Nguyen case was not only on the morning of trial. The jury had been impaneled. And did the Ninth Circuit say on the morning of trial you can remove your retained counsel? Because I didn't see that. I think unless – I'm sorry, I interrupted. Unless the trial court makes a detailed examination on the record of why it's a burden on the administration of justice. Do you want to read that quote to us? Which was not done in this case. Do you want to read that quote to us? I'm sorry? Do you want to read the quote from Nguyen to us that stands for that proposition? Yes. I actually have it right here. The Nguyen court, moreover – it's on page 14 of our reply brief. Nguyen court, moreover, explicitly held that the, quote, mere fact that a jury pool was ready for selection and sworn or even that the jury was ready for trial does not automatically outweigh the defendant's Sixth Amendment right to hire a counsel of choice. Counsel, I don't think anybody quarrels or could quarrel with that proposition. But I think what we said in Brown was that when you're talking about the trial court's calendar, the interests of justice, that the court has the right to weigh the impact on the interests of justice in deciding whether it's going to allow a very, very, very last-minute continuance. And what I'm trying to figure out here is what did the court do here that was an abuse of discretion, that he looked at his trial calendar, he said it's packed, and I just can't figure out why he abused his discretion here. Well, see, that's an interesting question, too, because my position after reading all this and studying it not only in this case but in my particular case is I'm not sure there is discretion in this situation. However, I think nobody is suggesting, I'm certainly not suggesting that it's an absolute right that, you know, in the middle of opening statements you can fire your lawyer. No, but the trial judge has to make a record and not just say my calendar is crowded. Every district court calendar that I'm aware of throughout the United States, and I've been in a lot of them, is crowded. So that is not any kind of substantive analysis, period. There is another issue in this case that I'm really concerned about. I know you're over your time now, but we'll give you a minute for no, it's four seconds in the hole. We'll give you a minute for rebuttal. Thank you. Thank you. Good morning, Your Honors, and may it please the Court. I'm Teal Miller on behalf of the United States. As the Court's questions suggest, there is a right to fire retained counsel, but the right is not absolute. And as Brown puts it, when denial of a motion to discharge is compelled by purposes inherent in fair, efficient, and orderly administration of justice, then it is not an abuse of discretion to deny the motion. And here the district court averted to the fact that its schedule was packed, and that's the word that it used. And it also carefully weighed any countervailing considerations and determined that an officer of the court's representation that she was prepared to go to trial was a sufficient basis or was sufficient weight on the side of there not being the court. The court understood that there might be circumstances in which a calendar wasn't enough of a reason to denial a motion to discharge. Counsel, I do think your colleague representing the defendant does make a good point that the statement by the trial court was pretty cursory. I'm not sure I would describe it as flip, but it's like, I'm really busy. I spend a lot of time in trial. My trial calendar is packed. But he didn't, on the record, put forth, I've got a trial next week, I've got a trial in two weeks, I've got a trial for the next three months. He didn't try to make any determination of how long a delay would be necessary. Given the importance of the Sixth Amendment right, why isn't more of a finding necessary on the record here? Well, Your Honor, I don't think there's anything in Brown or in the Supreme Court's decisions in this area that suggests that the burdens of a trial calendar have to be set out in more detail. So I don't think it was an abuse of discretion when the court was going through the, when the court was ending the hearing for the court to avert to it in that sort of a fashion. And I think it actually is a little bit more detailed than just saying I'm busy. The court said I spend more time on the bench than my colleagues because I think it's really important to give litigants who want to go to trial the opportunity to be heard. And he quantified that in terms of the number of hours he'd spent on the bench in the previous year. So I think he did a little bit more than just saying I'm busy. He said my schedule is packed. But he didn't talk, he didn't try to go into how much of a delay would be necessary here. Not in those terms, but he did ask the defendant in the ex parte hearing, have you done anything to try and identify other retained counsel, which is a way of getting into like how much of a delay are we talking about here. So I agree, it's possible to imagine a district court saying more, but I don't think what the court said here shows that it abused its discretion in determining that the interests of justice and the public's right to a speedy trial in its own calendar weighed in favor of moving forward, especially in light of counsel's representation that she was prepared to go forward. It is true that different issues are raised. More often than not, this comes up in the context of somebody who's dissatisfied with appointed counsel. You have a whole array of issues there, and it's true, isn't it, that none of those factors apply here if you have somebody who's had and continues to report to continue to have retained counsel? So I wouldn't put it exactly that way. What I would say is when there's a motion to discharge retained counsel, the motion should be granted unless the interests of justice, which include the court's calendar and the public's right to a speedy trial, weigh on the other side. Once the court has made a determination that they do weigh on the other side, that they do weigh in favor of moving forward, the court in exercising its discretion should look at questions like, what is the basis of the motion to discharge? Is there other counsel available? So the same sort of factors that get considered when you're asking to discharge appointed counsel might come into play, but the analysis is, of course, as you suggest, different. It's just they only come into play if there's a reason to deny the motion to discharge based on the interests of justice. I'm going to suggest a second-level inquiry, that is the kind of questions you'd get in the Sixth Amendment appointed counsel context, that you're facing a potential ineffective assistance of counsel claim with traction, which might force the court to accede to a delay that otherwise not be required. But at the first level, what we're dealing with here, there's not an allegation of ineffective assistance that resulted here, and there was an expression to the district judge of dissatisfaction and the lack of confidence that the defendant had in his existing attorney. So that was still at the level where the court calendar administration of justice factors would enter in. There wasn't need for the court to dig any further. I think that's right, Your Honor. And I think the court had really conflicting statements from counsel and from the defendant about the nature of the conflict and the amount of preparation that counsel had done. And I think the court is entitled to rely on representations from an officer of the court that she's prepared to go forward. And she has filed all the motions she believed had merit in the case. With respect to the defendant's suggestion that the expert testimony from Agent Jewell was improperly admitted and overly prejudicial, I think this Court's decision in Ancrum is a full answer to that case, or to that suggestion. In Ancrum and in other cases, this Court approved testimony about the practices of drug dealers that helped the jury understand how seemingly innocuous events or items of evidence are evidence of drug trafficking. And that's what Agent Jewell testified to here. The sort of evidence that might not have been obvious to the jury, what its significance was, included hundreds of unused baggies, a ledger book with entries that was suggestive of drug dealing. And Agent Jewell's testimony just explained, without reference to Mr. Carlson or any of the items found against him, why those things might be indicative of a drug dealer. I mean, it does seem to me, I mean, this may ultimately be neither here nor there, but it does seem to me that there was no real part of the evidence here whose significance wouldn't have been obvious to a lay jury. I mean, this is a ledger that had notations as to quantity in it. I mean, I don't think it is beyond the pale of the jury that baggies are used for drugs. I mean, was this testimony really needed by the government here? Your Honor, we are not held to the bare minimum of testimony. The question is relevance and then whether it's overly prejudicial. And I actually think there are other aspects of Agent Jewell's testimony that show what a personal use dosage of methamphetamine might be, the street value of the drugs in question, and why that was indicative of dealing as opposed to personal use. This was an individual who adverted through his counsel before trial that his defense was going to be that he possessed more than a pound of methamphetamine for personal use. And he testified to that? He did. That's right. And his testimony in particular, I think his testimony on cross-examination shows that any error here in admitting Agent Jewell's testimony was not prejudicial in the relevant sense because the testimony on cross-examination went so much further. The testimony his counsel drew out about Agent Jewell in sort of, in the conviction, and that testimony would not be attributable to the government. So opposing counsel argues that the testimony, or at least some of it, amounted to profile testimony, that these innocent items in somebody's house are characteristic of a criminal. What's your response to that? So I don't think profile testimony of the kind that concerned the court in Wells is at issue here because there's a difference between saying what happened in Wells was there was an expert who testified as the kind of person who commits a workplace homicide and some of their personal characteristics. Here, Agent Jewell made no representations about the kind of person who was a drug dealer. What he did was he said these are the kinds of items you might find in drug dealing. And so it's not a profile or personality or characteristics. It's just the significance of particular items or particular behavior. And this Court has repeatedly approved that kind of testimony. If the Court has no further questions, we ask that the judgment be affirmed. Thank you. I might address the first issue we were talking about before briefly, and that is the failure to allow trial counsel to withdraw. I do not believe that's an absolute rule. I do not believe, with all respect to Judge Layton, who I like a lot, he made a record. I'm sorry, he did not. On our brief on page 13, under United States v. Rivera-Corona, quote, unless a substitution would cause significant delay or inefficiency or run afoul of other considerations we've mentioned previously, a defendant can fire his retained or appointed counsel and retain new counsel for any reason or no reason at all. And so I'm not suggesting, because that would be absurd, that it's an automatic rule. But there is no record here, with all respect. And, you know, having tried 367 cases as of last week and a number of them in federal court and a number of them in front of Judge Layton, his calendar is always crowded and most district courts are. I'd really like to address briefly. You're over your time. I think we have your argument. Okay, thank you. The case of United States v. Carlson is submitted. Thank you.
judges: Clifton, Ikuta, Bennett